**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| BARRY LEFKOWITZ<br>5 Azalea Drive<br>Lumberton, New Jersey 08048, | : <br> : <br> : <br> : | |
| DAVID SPECTOR<br>18 Victory Drive<br>Bellmawr, New Jersey 08031 | : <br> : <br> : <br> : | |
| CAROL GABEL<br>448 Hobart Road<br>North Brunswick, New Jersey 08902 | : <br> : <br> : <br> : | |
| and | : <br> : | |
| SAM SPECTOR<br>925 North Palm Way<br>Lake Worth, Florida 33460, | : <br> : <br> : <br> : | |
| Plaintiffs, | : <br> : | Civil Action |
| v. | : <br> : | |
| MTRAC TECH CORPORATION,<br>5333 South Arville Street, Suite 206<br>Las Vegas, Nevada 89118, | : <br> : <br> : <br> : | No. _____ <br><br>JURY TRIAL DEMANDED |
| and | : <br> : | |
| GLOBAL PAYOUT, INC.,<br>5333 South Arville Street, Suite 206<br>Las Vegas, Nevada 89118, | : <br> : <br> : <br> : | |
| Defendants. | : <br> : | |

**COMPLAINT**

Plaintiffs Barry Lefkowitz, David Spector, Carol Gabel and Sam Spector (collectively the "Representatives"), by and through their undersigned attorney, say the following by way of complaint against defendants MTrac Tech Corporation ("MTrac") and Global Payout, Inc. ("Global", and together with MTrac, "Defendants").

## THE PARTIES AND JURISDICTION

1. Plaintiff Barry Lefkowitz is an individual residing at 5 Azalea Drive, Lumberton, New Jersey 08048.

2. Plaintiff David Spector is an individual residing at 18 Victory Drive, Bellmawr, New Jersey 08031.

3. Plaintiff Carol Gabel is an individual residing at 448 Hobart Road, North Brunswick, New Jersey 08902.

4. Plaintiff Sam Spector is an individual residing at 925 North Palm Way, Lake Worth, Florida 33460.

5. Defendant MTrac Tech Corporation is a corporation organized under the laws of the State of Nevada having its principal place of business at 5333 South Arville Street, Suite 206, Las Vegas, Nevada 89118.

6. Defendant Global Payout, Inc. is a corporation organized under the laws of the State of Nevada having its principal place of business at 5333 South Arville Street, Suite 206, Las Vegas, Nevada 89118.

7. The Court has subject matter jurisdiction over this matter pursuant to 42 U.S.C. § 1332 because the amount in controversy is in excess of $75,000 and involves plaintiffs and defendants who are citizens of different states, within the meaning of 42 U.S.C. § 1332.

8. The Court has personal jurisdiction over Defendants, and venue is proper in this district, because paragraph 11.11 of the operative agreement between the parties provides that any lawsuit arising from the Agreement may be brought in the state and federal courts in the

State of New Jersey, and that the parties consented to the jurisdiction of those courts, because the Representatives rendered substantial services to defendants within this district, a substantial portion of the transactions and events giving rise to this action occurred within this district, and because three of the Representatives reside within this district.

## FACTUAL BACKGROUND

9. The Representatives cumulatively have decades of expertise and experience in providing government relations services at the local, state and national level.

10. Defendants are engaged in, inter alia, the commercialization of cashless "blockchain" payment platform technology intended for the cannabis industry and other "high risk" and "high cost" industries.

11. On or about August 17, 2018, the Representatives entered into a Joint Venture Agreement (the "Agreement") with Defendants pursuant to which the Representatives were to provide government relations services to Defendants in New Jersey, Maine, New Hampshire, Vermont, New York, Massachusetts, Connecticut, Rhode Island, Delaware, Pennsylvania, Maryland, the District of Columbia, Virginia, West Virginia; North Carolina; South Carolina; Florida; and Ohio.

12. Pursuant to paragraph 3.2(e) of the Agreement, M-Trac appointed the Representatives as M-Trac's primary government relations representative in these states and the District of Columbia, as well as before the United States Congress.

13. At the time the parties executed the Agreement, M-Trac had little to no funding or other resources, and could not pay market rates for the kind of government relations services that the Representatives would typically charge.

14. The parties agreed that in exchange for taking the risk of providing services to Defendants before Defendants could pay anything for the services, the Representatives would receive an undiluted grant of Global common shares, as well as a share of revenues that defendants achieved.

15. Consistent with this, paragraph 4.3(a) of the Agreement states in pertinent part that Defendants understood and agreed that the Representatives had "foregone significant opportunities to accept this engagement and that [Defendants] derive substantial benefit from the execution of this Agreement and the ability to announce [their] relationship with [Representatives]." Further, paragraph 4.4 of the Agreement reflects that at the time the parties executed the Agreement, M-Trac had yet to receive its first $250,000 in funding.

16. Paragraph 4.3 of the Agreement required Defendants to issue five million Global common shares to the Representatives "immediately" upon execution of the Agreement.

17. The Agreement does not state the period of time during which the five million shares initially granted to the Representatives would be restricted. However, during contract negotiations, M-Trac's David Flores proposed that the period of restriction would be one year from the date of the execution of the Agreement, which proposal the Representatives accepted.

18. During the pre-contract negotiations, the Representatives specifically insisted on one time protection against dilution of the number of shares to which the Representatives were originally entitled.

19. Defendants' representatives agreed to this request. Thus, paragraph 4.3(b) of the Agreement entitles the Representatives to the issuance of five million additional shares of Global

stock in the event that M-Trac executed a reverse stock split within the first 12 months after the execution of the Agreement.  The Agreement does not impose any restrictions on these shares.

20.     Paragraph 4.2 of the Agreement entitles the Representatives to a five percent share of any net profits derived from merchants whom the Representatives referred to M-Trac for a three year period, with the three year period measured from the date of the first transaction with the merchant.

21.     Paragraph 4.2(a) of the Agreement also provides that in the event that the Representatives secure statewide adoption of the M-Trac platform in a state, the Representatives are entitled to a ten percent revenue share for merchants onboarded after the date of statewide adoption, and a five percent revenue share for merchants who were on the M-Trac platform prior to statewide platform adoption, all for the same three year term applicable to the revenue share set forth in paragraph 4.2

22.     Paragraph 4.4 of the Agreement requires M-Trac to pay Barry Lefkowitz, Carol Gabel and David Spector monthly retainer fees of $1,000 per month.

23.     Beginning in August, 2018, the Representatives devoted considerable time and effort to create business and legislative opportunities for Defendants.

24.     In the summer of 2019, Barry Lefkowitz provided an email report to M-Trac's representatives detailing the Representatives' efforts in this regard, which have created tremendous opportunities for M-Trac.  M-Trac's Jason LeBlanc responded to this email by saying that "much of [M-Trac's] success can be attributed to the direct efforts of [the Representatives]."

25. On September 4, 2019, Defendants issued a press release stating that Defendants were processing tens of millions of dollars each day using Defendants' payment platform.

26. On or about July 19, 2019, Global executed a 100 to 1 reverse stock split with respect to it common shares. As a consequence, the Representatives are entitled to the issuance of the additional five million shares of Global common stock contemplated by paragraph 4.3(b) of the Agreement.

27. In a text exchange between Sam Spector and M-Trac's Steve Luna that occurred on August 13, 2019, after the Representatives learned that Defendants were considering reneging on M-Trac's agreement in this regard, Mr. Luna told Mr. Spector that "I am behind you I will do my part and we will make it right give me time."

28. By email dated August 16, 2019, the Defendants advised the Representatives that the Defendants would be taking the position that the Representatives were not entitled to the issuance of the additional five million shares of Global common stock.

29. To date, despite demand, and despite Mr. Luna's admission and promise to honor Defendants' commitment with respect to the issuance of admission to Global common stock to Sam Spector, Defendants have not issued any Global common shares to the Representatives, whether pursuant to paragraph 4.3(a) of the Agreement, 4.3(b) of the Agreement, or otherwise.

30. M-Trac is currently in arrears in the amount of $12,000 with respect to its monthly retainer payments required by paragraph 4.4 of the Agreement.

31. On or about August 30, 2019, defendants advised the Representatives by email that the Defendants were purporting to terminate the Agreement.

32. Both before and after Defendants' August 30, 2019 email termination communication, the Representatives affirmed that the Representatives were ready, willing and able to continue performing the Representatives' obligations for the duration of the initial three year term of the Agreement.

33. In response, the Defendants reconfirmed their intent to terminate the Agreement.

34. Defendants have issued press releases confirming that they have retained another public relations firm to provide public relations services to Defendants in the District of Columbia, and on information and belief, have taken steps to retain one or more public relations firms to provide similar services to Defendants in other states within the territory specified in the Agreement.

35. At the time that Defendants terminated the Agreement, the Representatives were in full compliance with their contractual obligations under the Agreement, and no grounds existed for Defendants' termination of the Agreement.

## COUNT ONE – BREACH OF CONTRACT

36. The Representatives hereby incorporate by reference the allegations of paragraphs 1 through 35 as though set forth fully herein.

37. The Agreement is a binding contract between the Representatives and Defendants.

38. By their conduct described above, Defendants materially breached the Agreement.

39. As a consequence of defendants' breach of the Agreement, the Representatives have suffered damages.

40. The Agreement provides that the Representatives may recover reasonable attorneys' fees in the event that they are required to institute litigation to enforce the Agreement.

WHEREFORE, the Representatives demand that the Court award consequential damages in an amount to be proven at trial, together with reasonable attorneys' fees, costs of suit, and such other and further relief as the Court may deem just.

## COUNT TWO – DECLARATORY RELIEF

41. The Representatives hereby incorporate by reference the allegations of paragraphs 1 through 40 as though set forth fully herein.

42. As a consequence of the foregoing, a present and actual controversy exists between the Representatives and the Defendants with respect to the number of shares of common stock in Global to which the Representatives are entitled under the Agreement.

43. As a consequence of the foregoing, the Representatives are entitled to the issuance of five million fifty thousand (5,000,050) shares of common stock in Global.

WHEREFORE, the Representatives demand that the Court declare that the Representatives are entitled to the immediate issuance of five million fifty thousand (5,000,050) shares of common stock in Global, together with an award of reasonable attorneys' fees, costs of suit, and such other and further relief as the Court may deem just.

## COUNT THREE – SPECIFIC PERFORMANCE

44. The Representatives hereby incorporate by reference the allegations of paragraphs 1 through 43 as though set forth fully herein.

45. As set forth herein, the Defendants have failed to comply with their obligations pursuant to paragraph 4.3 of the Agreement.

46. Paragraph 11.13 entitles the Representatives to specific performance of Defendants' obligations under paragraph 4.3 of the Agreement.

WHEREFORE, the Representatives demand that the Court enter an Order requiring the Defendants to specifically perform their obligations under paragraph 4.3 of the Agreement by immediately issuing five million fifty thousand (5,000,050) shares of common stock in Global, together with an award of reasonable attorneys' fees, costs of suit, and such other and further relief as the Court may deem just.

October 18, 2019

Respectfully submitted,

\_\_\_/s/Francis X. Taney, Jr._____
Francis X. Taney, Jr.
Taney Legal LLC
110 Simi Court
Cherry Hill, NJ 08003
Telephone: (215) 514-8736
Facsimile: (856) 494-1364
Email: frank.taney@taneylegal.com

Attorney for plaintiffs